vention had been anticipated. While laboring under that impression, he decided to keep it a secret and practise it for his own benefit; but the evidence clearly shows that as soon as he was undeceived, and it came to his knowledge that he had not been anticipated, he began his preparations for application for a patent, and obtained it without unnecessary delay. None of the defences set up by the respondent can be sustained, and they are accordingly overruled. The complainant is entitled to a decree as prayed in the bill of complaint, and for his costs.

---

AYLING, (TOWN OF WEYANWEGAN v.)
See Case No. 17,473.

---

## Case No. 687.

### AYLWARD v. SMITH.

Circuit Court, D. Massachusetts. Oct. Term, 1873.

[Affirming Aylward v. Smith, Case No. 688. Cited in Choate v. Meredith. Id. 2,692. Nowhere reported; opinion not now accessible.]

---

## Case No. 688.

### AYLWARD v. SMITH.

[2 Low. 192.][1]

District Court, D. Massachusetts. Dec., 1872.[2]

DEMURRAGE—LAY DAYS—ARRIVAL OF VESSEL.

Under the usual bill of lading, the lay days do not begin to run until the vessel has arrived at her place of discharge, and is ready to be unloaded.

[Cited in Gronstadt v. Witthoff, 15 Fed. 268; Fish v. One Hundred and Fifty Tons Brown Stone, 20 Fed. 202; The Henry Sutton, 26 Fed. 926; Manson v. New York, N. H. & H. R. Co., 31 Fed. 299.]

In admiralty. Demurrage.—Libel, by [James E. Aylward] the master of schooner Sandalphon, [against Martin L. Smith,] alleging that, on the seventh day of December, 1872, the Hoboken Coal Company shipped on board his vessel, then lying at Hoboken, in New Jersey, a cargo of coal, to be delivered to the respondent at Cambridgeport, Mass., for a certain freight, and the libellant signed a bill of lading therefor; that he proceeded on his voyage, and arrived at the wharf of the respondent on the 20th of December, and was detained there, by the respondent's neglect and fault, for twenty-seven days beyond the time allowed for discharging cargo by the contract between the parties. It appeared that the schooner was towed to the respondent's wharf in the afternoon of the 20th December, at about high tide; and was made fast outside of another vessel which

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

[2] [Affirmed by circuit court in Aylward v. Smith, Case No. 687.]

was in the berth. This other vessel was hauled out on the next day; but the libellant's schooner was then hard aground, and so remained for some days, the tides being lower than usual. Afterwards, the ice made round her, and she could not be hauled in until the 18th of January, when the cargo was discharged in less than two days. The libel stated the distance of the schooner from the wharf to be thirty-five feet; and the evidence was somewhat conflicting as to the exact distance, the respondent maintaining that it was considerably greater. Both parties did what they could to break the ice and to haul in the vessel. On the 28th of December, the deck load of twenty tons was delivered by means of a staging or bridge; and it was alleged that more might have been landed in this way; but the respondents testified that the bridge was so slippery and dangerous that it was impracticable to use it further. The bill of lading contained these words: "Usual dem. after three days, Sundays exc." It was agreed that this meant that the usual demurrage of eight cents per ton for each ton of the cargo was to be paid for every day the vessel should be detained beyond three days, exclusive of Sundays. The libellant demanded demurrage at this rate for twenty-seven days. [Libel dismissed. Decree affirmed in Aylward v. Smith, Case No. 687.]

C. F. Walcott, for the libellant, cited Abb. Shipp. (11th Ed.) 271; Brown v. Johnson, 10 Mees. & W. 331.

T. H. Russell, for respondent.

LOWELL, District Judge. It does not appear to me that the unfortunate delay in discharging this schooner arose from any fault on either side. I cannot agree that the defendant is responsible for the position which the master took up for his vessel while waiting his turn to unload. There was no hidden danger at that place of which warning should be given to strangers; and no notice was given by the master of his purpose to put the vessel there; no questions were asked or answered about depth of water, draft, or any thing else. The schooner lay in a place to which a tug master, well acquainted with the navigation, had taken her, and where she might well enough have awaited her turn at the dock if the accidental change of tides, caused by a change of wind, had not come on the next day, and if extreme cold weather had not set in at the same time.

It seems to be thought that a person who has a wharf with only enough water at ordinary times, and liable to be deficient on extraordinary occasions, or a wharf to which navigation is somewhat difficult or intricate, ought to be held to warrant the safe approach of all vessels that are navigated with ordinary care and skill; but I know of no such law. There was, as I have already ob-